IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James A. Butler, #10256-050, | ) | CIVIL ACTION NO. 9:08-2760-JMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The pro se Plaintiff brought this action seeking relief pursuant to, inter alia, Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA). On January 14, 2009, the Defendants[1] filed a motion for summary judgment. By order of this Court filed January 15, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal and summary judgment procedures and the possible consequences if he failed to respond adequately. Plaintiff was specifically warned that if he failed to respond, the Defendants' motion may be granted, thereby ending his case.

On February 2, 2009, Plaintiff filed a motion for an extension of time to respond to the Defendants' motion. Plaintiff's motion was granted, with the new response date being March 18, 2009. However, notwithstanding having received an extension and the specific warning and

[1]The "Defendants" originally included several individuals who were being sued under Plaintiff's Bivens claim.



instructions as set forth in the Court's Roseboro order, the Plaintiff failed to respond to the motion or to contact the Court in any way. Therefore, a Report and Recommendation was filed on March 24, 2009, recommending dismissal for lack of prosecution.

On April 9, 2009, Plaintiff filed a second request for an extension of time to respond, stating he had not received a copy of the summary judgment motion. The undersigned then vacated the Report and Recommendation which had already been issued, and Plaintiff's motion for another extension of time was granted on April 29, 2009 allowing Plaintiff another thirty-four (34) days to file his response. The Defendants were also instructed to mail Plaintiff a copy of their pending motion for summary judgment. Finally, the Order also stated that there would be no further extensions of time.

As before, no response to the Defendants' motion was filed, and a second Report and Recommendation was entered on June 5, 2009 recommending that this case be dismissed with prejudice for lack of prosecution. Plaintiff failed to file any objection to that Report and Recommendation, and an Order adopting the Report and Recommendation and dismissing this action with prejudice was entered by the Honorable Henry F. Floyd, United States District Judge, on June 23, 2009.

Almost a month later, on July 20, 2009, the pro se Plaintiff filed a motion to alter judgment together with a response in opposition to the Defendants' motion for summary judgment. The Defendants consented to the reopening of the case; therefore, an Order was entered on November 6, 2009 granting the motion to alter judgment, and referring the case back to the undersigned United States Magistrate Judge for further proceedings. After review of the arguments and evidence presented, a third Report and Recommendation was entered on February 9, 2010,





recommending that the Defendants' motion for summary judgment with respect to Plaintiff's Bivens claim be granted, and that that claim be dismissed, but that the Defendants' motion for summary judgment with respect to Plaintiff's FTCA claim be denied. Despite receiving several extensions of time to file any objections to the Report and Recommendation, no objections were ever filed, and an Order adopting the Report and Recommendation was entered by the Honorable J. Michelle Childs, United States District Judge, on November 30, 2010. As a result of this Order, the only Defendant remaining in this case is the United States of America.

On December 14, 2010, the Defendant filed a motion for summary judgment with respect to Plaintiff's remaining FTCA claim. A Roseboro Order was then entered by the Court on January 4, 2011, advising Plaintiff of the dismissal and summary judgment procedures and the possible consequences if he failed to adequately respond. Plaintiff's response to the Defendant's motion was originally due by February 7, 2011; however, Plaintiff filed a motion for an extension of time to respond on February 3, 2011, which was granted by the Court. Plaintiff was given an amended response time of March 1, 2011. Plaintiff then filed a second motion for an extension of time on February 23, 2011, and in an Order filed February 25, 2011 Plaintiff's motion was again granted, with the stipulation (in capital type) that "no further extensions will be granted". Plaintiff's new response date was March 18, 2011. However, as has been the case on numerous occasions with respect to this file, the time for Plaintiff to file his response has now expired, with no response in opposition having been filed.

The Defendant's motion for summary judgment with respect to Plaintiff's remaining





FTCA claim is now before the Court for disposition.[2]

**Background and Evidence**

This case was originally filed by the pro se Plaintiff in the District of Maryland, where he was serving a custody sentence at a federal correctional institution. As a portion of Plaintiff's complaint raised Bivens and Federal Tort Claims Act (FTCA) claims against the Defendants arising out of a period time Plaintiff was incarcerated at FCI Edgefield in South Carolina, that portion of the case was ordered transferred to the District of South Carolina.

With respect to his South Carolina claims, Plaintiff alleges in his unverified complaint[3] that in May 2005 he was transferred to FCI Edgefield. Plaintiff alleges that during his transfer (while he was in Atlanta) he had rectal bleeding and diarrhea every hour. Plaintiff alleges that he arrived at FCI Edgefield on May 31, 2005, at which time he reported to sick call that he had blood in his stool, no appetite and could not eat. Plaintiff alleges he was given an appointment for June 1, 2005, during which he complained of weight loss and stomach pain. Plaintiff alleges that lab work was done on June 3, 2005, which indicated no specialist was warranted. Plaintiff alleges that he thereafter went on sick call over six times, complaining about his symptoms, but received no medical care for his illness.

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff has filed an *unverified* Complaint. Therefore, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case.





Plaintiff alleges he was hospitalized in September 2005, where he was diagnosed with colitis, proctitis and anemia. Plaintiff alleges that he had to have a blood transfusion due to a misdiagnosis by the Defendants of having hemorrhoids. Plaintiff alleges that following his discharge from the hospital, his condition was "much better", and that he requested to be kept on the same or similar diet that he had received in the hospital. Plaintiff alleges that this request was refused, and that his condition then began to "move in the direction it was before"; i.e., loss of blood, pain and diarrhea. Plaintiff alleges he was re-hospitalized in February 2006 for the same symptoms.

In his remaining FTCA claim, Plaintiff seeks monetary damages for negligent care. See generally, Complaint.

In support of summary judgment in the case, the Defendant has submitted an affidavit from R. A. Blocker, a medical doctor who attests that he is the Clinical Director at FCI Edgefield, where his duties include providing medical treatment to inmates and supervising medical staff who provide medical treatment to inmates. Dr. Blocker attests that Plaintiff was an inmate at FCI Edgefield from May 25, 2005 to August 2, 2006, and that during that period of time he personally examined the Plaintiff regarding his complaints of rectal bleeding. Dr. Blocker attests that prior to coming to FCI Edgefield, Plaintiff was at FCI Cumberland (a federal prison facility in Minnesota) where he first complained of blood in his stool on or about March 10, 2003. Plaintiff was seen in sick call on March 21, 2003, during which Plaintiff denied a history of hemorrhoids, indicated he had not experienced any constipation or change in bowel habits, and refused a diagnostic rectal examination which could have confirmed rectal bleeding. Dr. Blocker attests that Plaintiff was given three stool sample cards and told to return them in two weeks, but that he failed to do so. Lab tests were ordered to determine if Plaintiff was anemic or had an infection, but test results were normal.



Dr. Blocker attests that medical staff noted that Plaintiff's bleeding could be gastrointestinal in origin because of a history of polyps and use of Motrin, but that although Plaintiff was advised to discontinue using Motrin he was reluctant to do so.

Dr. Blocker attests that Plaintiff thereafter returned to sick call on May 8, 2003 with the three stool sample cards, which were positive for blood. However, Plaintiff again refused a rectal examination, instead requesting a colonoscopy. Plaintiff was informed that he would be monitored and was advised to avoid taking Motrin, and his medical records reflect that he thereafter returned to medical four more times between May 9, 2003 and July 9, 2003 with various complaints, but that he did not complain about rectal bleeding.

Dr. Blocker attests that on July 21, 2003 Plaintiff again reported to medical complaining of back pain and rectal bleeding but, as before, Plaintiff refused a rectal examination. He was informed that his blood work had come back normal and was advised that certain medication he was taking might be causing blood in his stool. Plaintiff then returned a month later, on August 20, 2003, complaining of various issues including dark urine. As before, Plaintiff was offered a rectal examination to check his prostate and look for hemorrhoids or other possible causes of rectal bleeding, but he again refused. Plaintiff did not thereafter return to medical complaining about rectal bleeding while housed at FCI Cumberland, although he was seen on numerous occasions in 2004 and again in April 2005 regarding other medical issues.

On May 2, 2005, a medical summary form was completed by medical staff at FCI Cumberland as part of Plaintiff's transfer to FCI Edgefield. This form noted only that Plaintiff suffered from hypertension, and did not note that Plaintiff had any rectal bleeding or hemorrhoids. Plaintiff traveled through USP Atlanta in route to FCI Edgefield, where he completed a Health Intake





Assessment/History form wherein he stated that he could not keep food in his stomach and had hemorrhoids. However, there are no documents showing that Plaintiff complained to medical staff to USP Atlanta regarding rectal bleeding, digestive problems, or hemorrhoids, and he was not treated at USP Atlanta for hemorrhoids.

Dr. Blocker attests that Plaintiff arrived at FCI Edgefield on May 25, 2005, and that during the intake screening process Plaintiff indicated that he had a history of high blood pressure and hepatitis, and that he suffered back pain. Dr. Blocker attests that Plaintiff did not note anywhere on his intake forms that he was suffering from rectal bleeding or digestive problems, and when asked to list any other medical concerns, Plaintiff did not provide any additional information. However, six days following his arrival, Plaintiff reported to sick call on May 31, 2005 complaining of blood in his stool, that food would not stay in his stomach, that he had no appetite, and that he had experienced chest pains over the weekend. After a routine triage, Plaintiff was given an appointment for June 3, 2005. Dr. Blocker attests that prior to this appointment, during the required admission and orientation physical examination on June 1, 2005, medical staff informed Plaintiff that a digital rectal examination should be conducted in order to rule out prostate enlargement, rectal mass, or lower GI bleeding, but that as before Plaintiff refused to have this examination performed.

Dr. Blocker attests that Plaintiff was then seen for his scheduled sick call appointment on June 3, 2005, at which time he complained of blood in his stools, loss of weight, and lack of appetite. A physical examination indicated no abdominal mass or tenderness, and positive peristalisis, but a recommended rectal examination was again refused. Plaintiff was prescribed medication as preventative treatment for a possible bacterial infection, and labs were ordered. Dr. Blocker attests that once the lab results were received, he recommended a followup appointment.





Plaintiff was seen on July 18, 2005 and again on July 25, 2005, and following examination Plaintiff was diagnosed with dermatitis, diarrhea, hemorrhoids, and low back pain, and was provided with medications and care instructions.

Dr. Blocker attests that he examined the Plaintiff on August 19, 2005 and found tenderness in Plaintiff right upper quadrant and a positive blood occult. Plaintiff was provided refills of his hypertension medications, and additional laboratory tests were ordered. Dr. Blocker attests that on August 25, 2005 he submitted a consultation for Plaintiff to have a CT scan of his chest and pelvis "ASAP" because his labs indicated anemia and elevated protein levels. Plaintiff was then taken to the hospital for a CT scan the following day, the results of which were negative for lungs and an incidental left renal cyst with otherwise unremarkable CT of the abdomen. Plaintiff was also examined by a consulting Gastroenterologist, who recommended that a colonoscopy and an EGD be performed. Dr. Blocker attests that he submitted a consultation request for Plaintiff to have these performed on September 1, 2005. Dr. Blocker then examined the Plaintiff on September 2, 2005, at which time he recommended that, given Plaintiff's physical condition, he stop taking his blood pressure medications until a cause of his gastrointestinal problems was determined. Dr. Blocker also prescribed a nutritional supplement three times a day and ordered additional lab tests.

Dr. Blocker attests that Plaintiff had blood work at 6:30 a.m. on September 6, 2005, following which the clinical director received notice at 12:45 p.m of abnormal lab findings indicating some type of internal bleeding. The Gastroenterologist was consulted, and at 2:05 p.m. Plaintiff was examined by the clinical director, who explained the situation with the labs and that Plaintiff was to be taken to the local hospital for further evaluation. Plaintiff was thereafter admitted to the hospital under the care of the consulting Gastroenterologist. While in the hospital, Plaintiff





underwent a colonoscopy and EGD, which revealed colitis in all areas of the colon and rectum and active gastritis in the gastric biopsy. Plaintiff underwent an upper GI series with small bowel follow through on September 8, 2005, with unremarkable results. Plaintiff was prescribed various medications for this condition, and his diet was increased until he was on a regular diet without diary products. Plaintiff was discharged from the hospital on September 15, 2005, with recommendations to follow a regular diet, with gradual reintroduction of dairy products as he continued to improve.

Once back at FCI Edgefield, Plaintiff was seen on September 23, 2005 for complaints of rectal bleeding, weakness, lightheadedness, and inability to keep food down. He received triage, and was given an appointment for September 26, 2005. The physical examination performed on September 26, 2005 found Plaintiff had gained weight from his prior examinations, and his liver function tests were normal. Plaintiff was prescribed Ibuprofen, and was counseled on treatment, diet, and the Gatroenterologist's recommendation that he continue a regular diet and slowly reintroduce dairy products. Dr. Blocker attests that Plaintiff continued to be seen at regular intervals thereafter, where he complained of a variety of medical problems including anxiety. Dr. Blocker attests that he saw Plaintiff on November 22, 2005 with complaints of bloody diarrhea and anxiety, including "flashbacks" of war conditions. Although Plaintiff had complained that he could not gain weight, his weight was stable at 174, a gain of six pounds from September 26, 2005. Dr. Blocker attests that he reviewed in great length the etiology, causes and treatment of Plaintiff's condition and progress with him, advised Plaintiff that he could have a copy of his pathology report if he so desired, advised Plaintiff that his reports indicated he had compound ulcerative colitis or Crohn's, that he tried to assure Plaintiff that he would be ok and recommended a psychological consult for him, and continued Plaintiff on his existing medication. Plaintiff was then seen five days later in the health





services department complaining of chest pain, where he was assessed with anxiety and indigestion and given an antacid.

Plaintiff was seen by the clinical director on December 19, 2005, at which time he weighed 176 pounds. Plaintiff was assessed with PTSD (post traumatic stress disorder), high blood pressure, pan-colitis, anemia, and chronic lower back pain. He was prescribed medication and a referral was made for Plaintiff to again see the consulting Gastroenterologist. Dr. Blocker attests that Plaintiff was seen by the Gastroenterologist on January 19, 2006, who recommended that Plaintiff be hospitalized for the purpose of running a series of diagnostic studies and for treatment of Plaintiff's acute exacerbation of the colitis. Plaintiff's medical record reflects an entry from January 23, 2006 indicating approval had been given by the Southeast Specialist Consultant to allow Plaintiff to be hospitalized as recommended by the Gastroenterologist. Plaintiff was then called to health services that same day for evaluation and to obtain his consent for hospitalization and referral to a federal medical center (FMC). Plaintiff continued to complain of cramps and diarrhea at that time, although he was noted to weigh 176 pounds. Plaintiff was thereafter admitted to the hospital under the care of the consulting Gastroenterologist on January 23, 2006. A colonoscopy revealed left-sided colitis and proctitis, and after treatment Plaintiff was released on February 3, 2006 with no further signs of active bleeding, with his pain and diarrhea both resolved. It was recommended that Plaintiff follow a regular diet and follow-up with medical staff at the institution. Plaintiff was returned to the institution that day, at which time his weight was noted to be 175 and he had no complaints of any pain.

On February 13, 2006 Plaintiff was seen in health services stating he had not taken his medication since he had returned from the hospital, and that he was mostly eating sweets which





was causing him to have diarrhea. Plaintiff was examined by the clinical director, assessed with pan-colitis, and given medication. Plaintiff continued to be followed by the clinical director and medical staff through the spring of 2006, during which his weight remained stable. However, on May 4, 2006 it was noted that Plaintiff had lost some weight. Plaintiff was continued on his medication, was prescribed mineral oil to help with the digestion of his food, and a note was made concerning a pending Gi consultation. Plaintiff was thereafter seen by the consulting Gastroenterologist on May 10, 2006, and assessed with Crohn's, GI bleeding, abdominal pain, and diarrhea. The Gastroenterologist recommended that an Upper Gastroenterological Intestinal (UGI) series and a small bowel series be performed, as well as additional lab work. Plaintiff continued to be seen by medical and receive his prescribed medication, while lab results indicated improvement in his condition, and that his Crohn's disease had also improved.

The two procedures recommended by the Gatroenterologist were performed at an outside hospital on June 21, 2006. Plaintiff was returned to the institution that same day and did not voice any complaints at that time. Medical received the results of these two procedures on June 26, 2006, which indicated "chronic deformity in the area of the pylorus suggesting scarring secondary to previous ulcer disease. No active ulcer crater is identified on the current study. The small bowel series showed no diagnostic abnormality." On July 14, 2006, Plaintiff was accepted to FMC Rochester, and in preparation for this transfer Dr. Blocker examined Plaintiff on August 1, 2006. Dr. Blocker attests that he cleared Plaintiff for transport, and that Plaintiff arrived at FMC Rochester on August 2, 2006, where he was seen by medical for a medical intake screening. Dr. Blocker attests that Plaintiff remains at FMC Rochester at this time.

Dr. Blocker attests that Plaintiff's refusal to allow rectal examinations forced staff





to rely on lab results, which did not indicate a concern, and that medical staff properly diagnosed Plaintiff with hemorrhoids on July 25, 2005 based on the symptoms he presented at that time and the medical information available. Dr. Blocker attests that when Plaintiff did consent to a digital rectal examination almost a month later, the examination revealed blood in his stool and additional laboratory tests were ordered. Dr. Blocker attests that within one week of receiving the lab results, he referred Plaintiff to see a specialist because he had anemia and elevated protein levels. Plaintiff was seen by the specialist five days later, following which he was hospitalized when blood work indicated he had internal bleeding. Dr. Blocker attests that Plaintiff was never misdiagnosed by medical staff at FCI Edgefield, and that the medication prescribed to him did not cause internal bleeding, nor did it result in his hospitalization in September 2005. Further, Plaintiff underwent a C-scope and an EGD while in the hospital after he had been properly referred to a consultant Gatroenterologist, who performed these procedures. Thereafter, when Plaintiff was returned to FCI Edgefield he was maintained on a regular diet as recommended by the Gatroenterologist, and there is no medical evidence to suggest that being maintained on a regular diet, as recommended by the specialist, caused Plaintiff's medical problems to continue.

Finally, Dr. Blocker attests that Plaintiff was regularly monitored in the chronic care clinic at FCI Edgefield, had access to medical staff as needed through sick call, and that in addition to being regularly seen and treated by the medical staff at FCI Edgefield, Plaintiff was also seen by the outside specialist Gatroenterologist at least six times while he was housed at FCI Edgefield, and was also afforded numerous specialized tests at outside hospitals. Further, Plaintiff was transferred to FMC Rochester within three months after being diagnosed with Crohn's and internal bleeding. See generally, Blocker Affidavit.





In addition to this affidavit from a medical specialist, the Defendant has provided extensive copies of Plaintiff's medical records, including both prison records as well as outside consult and hospital records. See generally, Defendant's Exhibits.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

The FTCA waives sovereign immunity and allows suits against the United States for personal injuries caused by government employees acting within the scope of their employment. Under this Act, a plaintiff may recover monetary awards from the United States for damages "caused





by the negligent or wrongful act or omission of any employee of the Government while acting within the scope...of employment." 28 U.S.C. § 1346(b). Whether any government employee was negligent is to be determined "in accordance with the law of the place where the act or omission occurred," in this case the State of South Carolina. 28 U.S.C. § 1346(b).

In order to prove negligence in South Carolina, Plaintiff must prove by a preponderance of the evidence that 1) the Defendant had a legal duty of care; 2) the Defendant failed to discharge that duty; and 3) the Defendant's breach proximately caused him injury. Ajaj v. United States, 479 F.Supp.2d 501, 549 (D.S.C. 2007); Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 834 (S.C. 1997); Bailey v. Segars, No. 3370, 2001 WL 791740 (S.C.Ct.App. 2001); Hubbard v. Taylor, 529 S.E.2d 549 (S.C.Ct.App. 2000). Further, Plaintiff is required to show negligence with reasonable certainty, not through mere conjecture, and he may not attempt to prove negligence through the doctrine of res ipsa loquitur. Ajaj, 479 F.Supp.2d at 549; Eickhof v. Beard-Laney, 20 S.E.2d 153, 155 (S.C. 1942); Crider v. Infinger Transportation Co., 148 S.E.2d 732, 734-735 (S.C. 1966).

Here, the Defendant concededly had a legal duty of care, as prison officials have a duty to provide appropriate medical care to prisoners. While this duty can reach the level of a constitutional claim in so far as appropriate medical care for prisoners is mandated by the Eighth Amendment, for purposes of an FTCA claim this duty is provided by statute; see 18 U.S.C. § 4042; which provides that the standard of duty owed is that of "reasonable care". See Johnson v. U. S. Government, 258 F.Supp. 372, 376 (E.D.Va. 1966)[Under Section 4042, a prison official's duty requires only the exercise of ordinary diligence under the circumstance]; see also In re Agent Orange Product Liability Litigation, 635 F.2d 987, 996 (2d Cir. 1980) [dissenting] (citing Owens v. Haas,





601 F.2d 1242 (2d Cir. 1979), cert. denied, 444 U.S. 980 (1979)); Harley v. United States, No. 08-820, 2009 WL 187588 at * 4 (D.S.C. Jan. 26, 2009). Plaintiff has provided no evidence to support the general and conclusory claims in his unverified Complaint that prison officials did not provide him "reasonable care". To the contrary, the voluminous medical records provided as exhibits to this Court, together with Dr. Blocker's sworn testimony, provides a detailed record of the continuous and ongoing care Plaintiff was provided during the relevant time period, not just at the prison but by outside medical referrals as well.

In contrast to this evidence of medical care, other than his own conclusory and self serving speculation, Plaintiff has presented no evidence whatsoever to show that the medical care he received during the relevant time period was in any way improper. Specifically, Plaintiff has presented no evidence, such as affidavits from other medical professionals or any other type of medical evidence, to support his claim. Luckett v. United States, No. 08-13775, 2009 WL 1856417 at * 5 (E.D.Mich. June 29, 2009) (citing Lambert v. United States, 198 Fed.Appx. 835, 839 (11th Cir. 2006)[affirming dismissal of medical malpractice claim under FTCA where Plaintiff submitted only "his own conclusory allegations."]; cf. Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; cf. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on Eighth Amendment deliberate indifference claim].

After review of the evidence and arguments submitted to this Court in the light most





favorable to the Plaintiff, the undersigned does not find that Plaintiff has presented a sufficient issue of material fact as to whether prison officials failed to exercise "ordinary diligence under the circumstances". Nothing in the medical evidence provided to this Court supports Plaintiff's negligence claim, and his failure to provide any such evidence, or even to respond to the Defendant's motion for summary judgment, is fatal to his claim. Johnson, 258 F.Supp. at 372 [duty of care only requires exercise of ordinary diligence under the circumstances]. The Defendant is therefore entitled to summary judgment in this case. Eickhof, 205 S.E.2d at 156 [a plaintiff is required to show negligence with reasonable certainty, and not through mere conjecture]; see Papasan v. Allain, 478 U.S. 265, 286 (1986) [courts need not assume the truth of legal conclusions couched as factual allegations]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["even though pro se litigants are held to less stringent pleading standards then attorneys, the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [plaintiff's conclusory allegations insufficient to maintain claim].

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

March 24, 2011
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 2940

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).



